Leslie A. PRICHARD

v.

The UNITED STATES.

No. 49960.

United States Court of Claims.

Nov. 8, 1955.

Jerome J. Dick, Washington, D. C., for plaintiff. Edgar J. Goodrich and

Bernard L. Goodman, Washington, D. C., were on the brief.

LeRoy Southmayd, Jr., Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

Plaintiff sues for retired pay.

Plaintiff appeared before an Army Retiring Board on December 11, 1945. This board found that he was permanently incapacitated for active service on account of deafness, and that his deafness had been aggravated by his service and was, therefore, an incident of his service.

On review, the Surgeon General recommended that the case be returned to the Retiring Board for further consideration because a mastoidectomy had been performed on plaintiff in 1923, and thereafter there had been a marked diminution of his hearing lasting until at least 1925. The Surgeon General stated that "his present incapacity may therefore well be the natural progression of a pre-existing condition."

The matter was returned to the Retiring Board, which, after hearing additional testimony, adhered to its original decision that plaintiff's deafness had been aggravated by his service and that it was, therefore, an incident of his service.

On review the Surgeon General recommended that the Secretary of War should hold that plaintiff's incapacity was not an incident of his service.

The Adjutant General, acting for the Secretary of War, then referred the case to the Secretary of War's Personnel Board. This board disapproved of the finding of the Retiring Board that plaintiff's incapacity was an incident of his service.

Plaintiff then applied for a review by the Secretary of War's Disability Review Board. This board also disapproved of the findings of the Retiring Board and concluded: "Any increase of symptoms or additional physical findings of deafness while on active military service as a commissioned officer are not beyond the natural progress of the pre-existing ear disability and do not constitute permanent aggravation."

On October 1, 1946, the Secretary of War approved these findings, and plaintiff was denied retired pay.

Plaintiff requested a rehearing by the Disability Review Board, but the board found that no new evidence had been presented, and, hence, it adhered to its former conclusion.

Plaintiff then requested a review by the Army Board for Correction of Military Records. This board found that "a thorough review" of the records "fails to reveal any evidence of error or injustice relative to the determination that you did not have a disability, incurred in or aggravated by service, of a degree warranting retirement for physical disability, incurred in service, on 17 April 1946, the date of your separation from service."

The determination of an officer's right to be retired for physical disability, and his right to retired pay, has been vested by Congress in the President. Section 933 of Title 10, U.S.C. (1946 ed.) provides:

"When a retiring board finds that an officer is incapacitated for active service, and that his incapacity is the result of an incident of service, and such decision is approved by the President, said officer shall be retired from active service and placed on the list of retired officers."

By sections 456 and 456a of Title 10 U.S.C. (1946 ed.) this provision was made applicable to reserve officers.

It follows that no court has any jurisdiction to review the action of the Secretary of War, acting for the President, unless his decision is arbitrary, or capricious, or plainly contrary to law.

Plaintiff relies on Army Regulations 40–1025, paragraph 63(g) (2), in support of his allegation that the decision of the Secretary of War was arbitrary

and contrary to law. This provides in part:

"Irrespective of length of service, an Army patient will be presumed to have been in sound condition upon entering active service, unless the disease or injury, or the conditions which brought about the disease, injury, or death, were noted on the patient's physical examination upon entrance into the service, or unless clear and unmistakable evidence (3 below) demonstrates that the injury or disease, or the conditions which caused the disease, injury or death, though not noted, existed prior to the patient's active service. Further, even if the existence of the condition prior to entering active service has been established, only specific findings of "natural progress" of the disease or injury, based on well-established medical principles, are able to overcome the presumption of service-aggravated (4 below). This provision will serve as a basis for judging line of duty in all cases, on or after 7 December 1941, and before the termination of hostilities incident to the present war. * * *"

Paragraph 63(g) (3) of Army Regulations 40–1025, provides in part:

"Medical judgment alone, as distinguished from well-established medical principles, will not be considered sufficient to rebut the presumption of the patient's sound condition at the time of his entrance into active military service * * *"

Paragraph 63(g) (4) provides in part:

"Any increase in disability during active service resulting from a condition that existed prior to active service will be presumed to have been service-aggravated, unless it can be proved otherwise on the bases of well-established medical principles. Medical or surgical treatment furnished during service for pre-existing conditions does not of itself establish increase in disability; however, if such treatment was necessitated by increase in severity of pre-existing conditions, then such disability will be considered as service-aggravated, unless the condition was improved by such treatment * * *"

Under these regulations, therefore, it is to be presumed that the patient was in sound condition when he entered the service. Furthermore, "only specific findings of 'natural progress' of the [pre-existing] disease or injury, based on well-established medical principles, are able to overcome the presumption of service aggravated." Then it is said, that "any increase in disability during active service resulting from a condition that existed prior to active service will be presumed to have been service-aggravated, unless it can be proved otherwise on the bases of well-established medical principles."

■ These regulations were binding on the retiring boards, and on the Surgeon General, and on the Disability Review Board, and on the Board for Correction of Military Records, and on the Secretary of War. Since they were reasonably designed to carry into effect acts of Congress, they have the force and effect of law.

Plaintiff says that these presumptions have not been rebutted.

The Surgeon General, of course, did not make "specific findings" that plaintiff's incapacity was the result of "natural progress" of the disease; but, because he thought that "his present incapacity may therefore well be the natural progression of a pre-existing condition," he recommended that the case be returned to the Retiring Board. But this board did not think that his present condition was the natural progression of a pre-existing condition, but that it was the result of an aggravation of his pre-existing condition.

On the contrary, the Secretary of War's Disability Review Board found: "Any increase of symptoms or additional physical findings of deafness while on ac-

tive military service as a commissioned officer are not beyond the natural progress of the pre-existing ear disability and do not constitute permanent aggravation." This ruling was reaffirmed on consideration of plaintiff's request for a rehearing.

The Army Board for Correction of Military Records, at plaintiff's request, reviewed the records applicable to his case and concluded that they did not disclose "sufficient basis for a hearing of your case by the board."

■■ The evidence before the four boards was the same. Three boards came to one conclusion, and the fourth to another. Three boards evidently thought that the presumption set up by paragraph 63(g) (4) of the Army Regulations cited above had been overcome, because it is to be presumed that they took these regulations into consideration. Only one of the four boards thought it had not been. Who was right, we do not know; nor is it our province to make this determination. Congress vested this authority in the Secretary of War, acting for the President. His action in approving the findings of the Disability Review Board and the Board for Correction of Military Records is not shown to have been arbitrary or contrary to law, and, therefore, we have no jurisdiction to review it.

There is no doubt of the fact that plaintiff had had a mastoidectomy while a cadet in the United States Military Academy, and that upon his application for re-admission to the Academy in 1925 he was found to still have defective hearing, and for this reason the application for his admission to the Academy was denied. But between this time and the time of plaintiff's commission in the Reserve Corps of the Army on November 25, 1940, his hearing had sufficiently improved so that his physical examination, prior to his being commissioned, showed 20/20 for each ear, which is normal.

Further, when plaintiff was physically examined for duty as an aerial observer his hearing was found to be normal, even on the whisper test.

Therefore, notwithstanding plaintiff's ear trouble some twenty years before his discharge, plaintiff's hearing when he entered the service was presumed to be good, and his later deafness was presumed to have been incurred in service, or the previous injury contributing toward his deafness was presumed to have been aggravated by his service.

■ During his service plaintiff was subjected on a number of occasions to severe bombardment by heavy artillery fire. It is common knowledge that this will cause temporary deafness, at least, and if there has been a pre-existing injury to the ears, it could well cause permanent deafness.

Were we at liberty to review the facts, we might well have come to the conclusion that the evidence did not rebut the presumption, but rather supported it; but three of the boards thought otherwise and the Secretary of War concurred. We cannot say that these decisions were arbitrary or contrary to law, or so clearly lacking in factual support as would require us to hold them to have been arbitrary or capricious. Under these circumstances we will not review the Secretary's decision.

It results that plaintiff's petition must be dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and LITTLETON, Judges, concur.